## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **MICHAEL COUGHHORN** | § | **PLAINTIFF** |
| | § | |
| **v.** | § | **CAUSE NO. 1:05CV294** |
| | § | |
| **JACKSON COUNTY, MISSISSIPPI, et al.** | § | **DEFENDANTS** |

## MEMORANDUM OPINION AND ORDER GRANTING
## DEFENDANT JACKSON COUNTY, MISSISSIPPI'S
## MOTION FOR SUMMARY JUDGMENT

THE MATTER BEFORE THE COURT is the Motion for Summary Judgment [45] filed

by Defendant Jackson County, Mississippi.  In this 42 U.S.C. § 1983 complaint Plaintiff, a

detention center inmate, claims that his rights to be protected from violence at the hands of

fellow inmates were violated by the Defendant.  Plaintiff has filed his response, and the

Defendant has replied.  After due consideration of the submissions, it is the Court's opinion that

the Plaintiff has failed to show that there is a question of material fact for the jury.  The

Defendant is therefore entitled to judgment as a matter of law.

## DISCUSSION

Plaintiff Michael Caughhorn[1] was an inmate at the Jackson County Adult Detention

Center in Pascagoula, Mississippi in April 2004 when another inmate, Calvin Long, "attacked"

him.  Caughhorn required emergency surgery on his head and brain, plastic surgery to his face

and head and physical therapy.  He sued Jackson County, Mississippi along with other

unidentified defendants, bringing claims of negligence, a Fourteenth Amendment equal

protection claim and an Eighth Amendment cruel and unusual punishment claim.  Jackson

County moved for summary judgment as to all of Plaintiff's claims, but in his response, Plaintiff

---

[1]Incorrectly identified in the Complaint as Michael "Coughhorn."

contested the Motion only as to his Eighth Amendment cruel and unusual punishment claim.  By

failing to provide any legal or factual analysis of the remaining claims, Caughhorn has waived

them.  *See Cannon v. Lennox Industries, Inc.*, 1998 WL 50467, *1 (N.D.Tex. 1998), citing

*Cavallini v. State Farm Mutual Auto Insurance Co.*, 44 F.3d 256, 260 n. 9 (5th Cir. 1995).

Therefore, only the Eighth Amendment claim will be addressed.

The incident at issue was captured by a surveillance camera, and a recording has been

attached as Exhibit 13 to the Motion.  Plaintiff does not object to Defendant's recitation of the

following sequence of events as shown by the recording:

> At 6:34:39 p.m., Mr. Caughhorn is standing on the right side of the table with his arms crossed in front of him and with inmate Calvin Long standing to Caughhorn's right rear.
>
> At 6:34:45 p.m., Calvin Long is directly behind Caughhorn with Long's right arm around Caughhorn's neck and Long's left arm behind Caughhorn's head.
>
> At 6:34:47 p.m., Long starts to lean back a little and Caughhorn still has his arms crossed across his chest.
>
> At 6:34:48 p.m., Caughhorn starts to move his arms up toward his neck.  Long continues to bend backward.
>
> At 6:34:56 p.m., Caughhorn has dropped or been tossed to the floor.
>
> At 6:34:59 p.m., Long is seen bending over Caughhorn, then Long stands up and bends back down to check on Caughhorn.  Other inmates approach.
>
> At 6:35:55 p.m., the first officer comes into the cell block from the left side of the screen and goes over to Caughhorn.
>
> At 6:35:59 p.m., six officers are in the cell block.
>
> At 6:36:53 p.m., a wheel chair is rolled in from the left side of the screen.
>
> At 6:37:28 p.m., Caughhorn is in the wheelchair being rolled out of the door of the cell block.

Caughhorn testified at his deposition that he was picked on and hassled by other inmates.

(Exh. "A" to Pl. Resp. Mot. Summ. Judg., pgs. 14, 15).  He testified that he told this to the

guards on duty and asked for a transfer.  According to Caughhorn, he was told "they  wasn't here

to accommodate me."  (Exh. "A" to Pl. Resp. Mot. Summ. Judg., pg. 14).[2]

---

[2]Caughhorn also testified:

Q.      – [L]et me put it that way – did you get along with the inmates in there, the other
        inmates?
A.      To my knowledge, I did.
Q.      Okay.  And what about Calvin Long, did you get along with Calvin Long?
A.      I never really knew Calvin.
Q.      Do you know if he was the man that you were involved in with this incident?
A.      Yes.
Q.      You and Calvin Long had been in the cell block together for some time, though,
        hadn't you?
A.      Yes, sir.
Q.      And during that time, did you and Calvin have any arguments or fights?
A.      No, sir.
Q.      What about other inmates in the cell block you were in, did you have any kind of
        fights with them before this incident?
A.      No, sir.  I mainly tried to stick to myself.

                                          . . . .

Q.      But you and Calvin had no words before that?
A.      We've had our altercations before, but, I mean, nothing physical.  I mean, because
        him coming in there trying to take my food all the time.
Q.      Who did you tell that he was trying to take your food all the time?
A.      I told other inmates and, you know, I told deputies there before.  That's why I
        wanted a transfer.

                                          . . . .

Q.      It's your opinion, as I understand it, that Calvin Long chocked you because y'all
        had previously had some verbal communications?
A.      To be honest with you, I don't know why he done it.  I'd still like to know that,
        myself.

                                          . . . .

Q.      And how soon before this incident, if you know, did you tell one of the deputies

PLAINTIFF'S CLAIMS:

Caughhorn argues both that "the Jackson County Adult Detention Center was negligent in providing safety to the Plaintiff" and that Jackson County "violated the Eighth Amendment by being deliberately indifferent to the risk to him and failing to act appropriately." Plaintiff has failed to identify the individual officers who are allegedly responsible for his unconstitutional treatment.[3]

To the extent Plaintiff contends Defendant was guilty of negligence, his claim is not cognizable under § 1983. Section 1983 is not a federally created tort statute. It is a "federal remedy against incursions under the claimed authority of state law upon rights secured by the Constitution and laws of the Nation." *Mitchum v. Foster,* 407 U.S. 225, 239 (1972). The Fifth Circuit Court of Appeals stated:

> Section 1983 neither provides a general remedy for the alleged torts of state officials nor opens the federal courthouse doors to relieve the complaints of all who suffer injury at the hands of the state or its officers. It affords a remedy only to those who suffer, as a result of state action, deprivation of "rights, privileges, or immunities secured by the Constitution and Laws" of the United States.

*White v. Thomas*, 660 F.2d 680, 683 (5th Cir. 1981).

---

out there that you were being, quote, "picked on?"
A.    A couple of days before.

Q.    Was Calvin Long the only one picking on you?
A.    Yes, sir.
Exh. 20 to Def. Mtn. Summ. Judg., pgs 13, 14, 17, 26.

[3]Plaintiff has named as Defendants:
"Unknown individuals "1", "2" & "3", Unknown parties of interest "i" "ii" & "iii"and Unknown corporations "A", "B" & "C.""

<u>Municipal Liability under 42 U.S.C. § 1983</u>:

It is well setteled that "Prison officials have a duty under the Eighth Amendment to protect inmates from violence at the hands of other prisoners."  *Horton v. Cockrell,* 70 F.3d 397, 400 (5th Cir.1995); *see also Johnston v. Lucas,* 786 F.2d 1254, 1259 (5th Cir. 1986) and *Smith v. Wade,* 461 U.S. 30 (1983 )).   Here, Caughhorn has identified no individual officials.  Instead he alleges that Jackson County violated his constitutional right to be protected from violence at the hands of other inmates.  Jackson County, as a governmental entity, may have liability for constitutional violations under certain circumstances.  "[M]unicipal liability under section 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom ."  *Piotrowski v. City of Houston,* 237 F.3d 567, 578 (5th Cir. 2001) (citing *Monell v. Dep't of Social Services,* 436 U.S. 658, 694 (1978)).  Furthermore, *Monell* "and later decisions reject municipal liability predicated on *respondeat superior,* because the text of section 1983 will not bear such a reading." *Id.* (citing *Bd. of Comm'rs of Bryan County v. Brown,* 520 U.S. 397, 403 (1997)).  Therefore, "the unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur; isolated unconstitutional actions by municipal employees will almost never trigger liability." *Piotrowski,* 237 F.3d at 578.  But a policy need not be official to trigger municipal liability under § 1983: a custom may also evidence a policy. *Id.*  However, in order for an unofficial policy, or custom, to make a municipality potentially liable under § 1983, "[a]ctual or constructive knowledge of [the] custom must be attributable to the governing body of the municipality or to an official to whom that body has delegated policy-making authority." *Webster v. City of Houston,* 735 F.2d 838, 842 (5th Cir. 1984) (en banc).

Plaintiff does not identify either a policymaker or a policy or custom that caused his injury, nor does he allege that an identified policy or custom was the moving force behind the claimed constitutional violation.  Instead, Plaintiff attempts to hold Jackson County accountable for a constitutional violation arguable committed by unidentified County employees.  This is a cause of action which cannot be pursued under § 1983.  *Piotrowski v. City of Houston,* 237 F.3d 567, 578 (5th Cir. 2001).  Jackson County is therefore entitled to judgment as a matter of law.

**IT IS THEREFORE ORDERED AND ADJUDGED** that for the reasons stated above, the Motion for Summary Judgment [45] filed by Defendant Jackson County, Mississippi is **GRANTED.**

**SO ORDERED AND ADJUDGED** this the 2nd day of November, 2006.

s/ *Louis Guirola, Jr.*

LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE